UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESDRAS ELMER MAGUINA CORAL,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>Respondents. | No. 1:25-cv-02051-DJC<br><br><br><br>ORDER |

Petitioner is a noncitizen who entered the United States in June of 2023. (Mot. (ECF No. 2-1) at 2.) Over two years later, Petitioner appeared for a hearing at Immigration Court and was detained by Immigration and Customs Enforcement ("ICE") officials, purportedly pursuant to 8 U.S.C. § 1225(b)(2). (Mot. at 5; Opp'n (ECF No. 6) at 1.) On December 29, 2025, Petitioner filed a Petition for a Writ of Habeas Corpus along with a Motion for Temporary Restraining Order, arguing his present detention is unlawful and seeking release or a bond hearing. (ECF Nos. 1, 2.) As the government does not oppose the Court converting this Motion for Temporary Restraining Order into a Motion for Preliminary Injunction, the Court does so here. (*See* Opp'n (ECF No. 6) at 2.) For the reasons stated below, Petitioner's Motion is granted.

1

**BACKGROUND**

Petitioner is a noncitizen from Peru who entered the United States on June 5, 2023. (Mot. at 2.) At that time, Petitioner was detained by a U.S. Border Patrol agent. (*Id.*) Petitioner was then released on his own recognizance. (*Id.* at 3.) In the years following his initial detention, Petitioner complied with all supervision and reporting requirements. (*Id.* at 7–8.)

In December of 2024, Petitioner filed applications for asylum and withholding of removal. (*Id.* at 3.) Petitioner also sought protection under the Convention Against Torture due to violent threats he faced from a gang and "the police's refusal to accept his complaint." (*Id.* at 4.)

On November 7, 2025, Petitioner appeared for a hearing with an Immigration Judge. (*Id.* at 5.) The Immigration Judge ordered Petitioner removed to Peru and denied petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture. (Salgado Decl. (ECF No. 2-3), Ex. L at 5–7.) Immediately thereafter, Petitioner was detained. (Mot. at 5.) Petitioner timely appealed the Immigration Judge's decision to the Board of Immigration Appeals ("BIA"). (*Id.*) Petitioner remains detained in the California City Detention Facility. (*Id.* at 6.)

Petitioner filed a Petition for a Writ of Habeas Corpus and a Motion for Temporary Restraining Order. (ECF Nos. 1, 2.) Briefing on the Motion for Temporary Restraining Order is now complete. (Mot. (ECF No. 2-1); Opp'n (ECF No. 6).) The Court ordered this matter submitted without oral argument. (*See* ECF No. 4.)

**LEGAL STANDARD**

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their

favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citations omitted). The Ninth Circuit employs a sliding scale approach to the *Winter* factors, under which a strong showing on the balance of hardships may compensate for a lesser showing of likelihood of success. *See Where Do We Go Berkeley v. California Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022).

## DISCUSSION

### I. Likelihood of Success on the Merits

#### A. Applicability of Section 1231

As a threshold matter, 8 U.S.C. § 1231 cannot justify Petitioner's detention. Section 1231(a) only authorizes detention in two circumstances: during and after the removal period. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008). The removal period "ordinarily lasts 90 days but does not begin until the *latest* of the following: (i) The date the order of removal becomes administratively final"; "(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order"; "(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." *Id.* (emphasis omitted) (quoting 8 U.S.C. § 1231(a)(1)(B)).

In this case, the removal period has not yet begun, meaning Section 1231 does not apply. As neither of the other two triggering events has occurred in this case, it is solely necessary to ascertain whether Petitioner's order of removal is administratively final. *See* 8 U.S.C. § 1231(a)(1)(B)(i). "Except when certified to the Board, the decision of the Immigration Judge becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first." 8 C.F.R. § 1003.39.

However, when an order is appealed to the BIA, it becomes final only when the BIA dismisses the appeal.  8 C.F.R. § 1241.1(a).  As Petitioner has timely appealed his removal order to the BIA,[1] it does not qualify as "administratively final."  Therefore, Section 1231 cannot justify Petitioner's detention.  *See Prieto*, 534 F.3d at 1059 (holding that when the removal period has not begun, "the [noncitizen] may not be detained under any subsection of § 1231(a) unless and until" the event triggering the removal period takes place).

### B.  Detention under Sections 1225 and 1226

As Section 1231 cannot apply to Petitioner's detention, Section 1226 instead governs Petitioner's detention and rights therein.  The government argues that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) (Opp'n at 3), while Petitioner maintains that his detention is governed by 8 U.S.C § 1226(a). (Mot. at 7.)

Sections 1225 and 1226 both govern the detention and removal of noncitizens from the United States.  However, Section 1225 mandates detention, while Section 1226 establishes a discretionary detention scheme.  Section 1225 provides that a noncitizen "who is an applicant for admission . . . shall be detained."  8 U.S.C. § 1225(b)(2)(A).  In contrast, under Section 1226's discretionary scheme, a noncitizen may be detained pending a decision on their removal.  8 U.S.C § 1226(a).  Section 1226(a) affords noncitizens a statutory right to a bond hearing before an Immigration Judge.  *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256 (W.D. Wash. 2025) (citing 8 C.F.R. § 1236.1(d)); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022)  "At that hearing, the noncitizen may present evidence of their ties to the United States, lack of criminal history, and other factors that show they are not a flight risk or danger to the community."  *Bostock*, 779 F. Supp. 3d at 1256.

---

[1] Petitioner timely appealed this decision as he filed a Notice of Appeal three days after the Immigration Judge issued an oral decision ordering Petitioner removed.  (*See* Mot. at 5; 8 C.F.R. §1003.38(b) (providing that a Notice of Appeal of the decision of an Immigration Judge must be filed with the Board of Immigration Appeals 30 days after the Immigration Judge issues an oral decision).)

The government is incorrect that Section 1225 applies to Petitioner.  The government argues that because Petitioner is an "applicant for admission," 8 U.S.C. § 1225(b)(2) applies and mandates Petitioner's ongoing detention.  (Opp'n at 3.) However, this Court has previously joined numerous other courts within this Circuit in rejecting this broad reading of Section 1225.  *See Lopez v. Lyons*, No. 2:25-cv-03174-DJC-CSD, 2025 WL 3124116 (E.D. Cal. Nov. 7, 2025); *Singh v. Andrews*, No. 1:25-cv-01543-DJC-SCR, 2025 WL 3248059 (E.D. Cal. Nov. 19, 2025); *Mariagua v. Chestnut*, No. 1:25-cv-01744-DJC-CSK, 2025 WL 3551700 (E.D. Cal. Dec. 11, 2025); *Ortega v. Noem*, No. 1:25-cv-01663-DJC-CKD, 2025 WL 3511914 (E.D. Cal. Dec. 8, 2025); *Souza v. Robbins*, No. 1:25-cv-01597-DJC-JDP, 2025 WL 3263897 (E.D. Cal. Nov. 23, 2025).  Instead, Section 1225 applies solely to those arriving at the border while Section 1226 applies to those already present within the United States.

Here, it is uncontested that Petitioner was initially detained in June of 2023 and was released on his own recognizance shortly thereafter.  (Mot. at 2–3.)  It is also uncontested that Petitioner was taken into ICE custody on November 7, 2025, over two years after he entered the country.  (*Id.* at 5.)  Further, Petitioner has supplied evidence that he was released on his own recognizance.  (Salgado Decl., Ex. A at 3.) Thus Section 1225(b)(2) does not apply to Petitioner.

The Court's determination that Section 1226 applies to Petitioner also comports with Ninth Circuit precedent.  In the *Prieto-Romero v. Clark*, the Ninth Circuit first held that Section 1231 could not govern the detention of a noncitizen whose removal period had not been triggered by a qualifying event.  534 F.3d 1053, 1059 (9th Cir. 2008).  The Ninth Circuit then concluded this individual's detention was governed by Section 1226, the statute under which he had initially been detained.  *Id.* at 1058, 1062.  Therefore, as Petitioner's Section 1231 removal period has not yet begun and Petitioner was initially detained pursuant to Section 1226, that Section continues to apply to Petitioner and sets forth the rights and procedures accompanying his detention.

For the reasons stated in this Court's prior cases, Petitioner has established that he has a likelihood of success on the merits. *See, e.g.*, *Lopez*, 2025 WL 3124116; *Singh*, 2025 WL 3248059; *Mariagua*, 2025 WL 3551700. Petitioner has a clear liberty interest in his continued release. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Applying the balancing test described in *Mathews v. Eldridge,* 424 U.S. 319 (1976), and for the reasons identified in the Courts' prior orders, the Court finds that Petitioner has a substantial private interest in maintaining his out-of-custody status, and the risk of erroneous deprivation here is considerable. Finally, Respondents' interest in detention is low as Respondents' do not assert Petitioner is a flight risk or danger to the community and the effort and cost required to provide Petitioner with procedural safeguards are minimal.

**II.  Irreparable Harm**

Petitioner will suffer irreparable harm in the absence of preliminary relief. The Ninth Circuit has recognized the irreparable harm inflicted by the "subpar medical and psychiatric care in ICE detention facilities." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). More broadly, the Ninth Circuit has also acknowledged the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention." *Id*. Petitioner has thus established irreparable harm.

**III. Balance of the Harms & the Public Interest**

The final two *Winter* factors merge when the government is the nonmoving party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). "[I]n addition to the potential hardships facing [Petitioner] in the absence of an injunction," the court may consider "the indirect hardship to their friends and family members." *Hernandez*, 872 F.3d at 996 (quoting *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008)).

Here, the interests of equity and the public weigh in favor of Petitioner. Petitioner's family members are harmed by his ongoing detention. A temporary

restraining order also inflicts minimal harm to the government. Though Respondents have an interest in enforcing immigration laws, they have no interest in erroneously enforcing the wrong law, as they have done here. This Order instead furthers that interest through application of the correct law. Finally, this relief benefits the public. "[N]either equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022). There also appears to be no dispute as to Petitioner's risk of flight or danger to the community. For these reasons, the Court concludes that the equities and public interest weigh in favor of Petitioner.

## IV. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, *if any*," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Because the "the [government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983), the Court finds that no security is required here.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is converted to a Motion for Preliminary Injunction.
2. Petitioner's Motion (ECF No. 2) is GRANTED.
3. Petitioner Esdras Elmer Maguina Coral shall be released immediately from Respondents' custody. Respondents shall not impose any

7

additional restrictions on him, unless they are determined to be necessary at a future pre-deprivation/custody hearing.

4. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice – describing the change of circumstances necessitating his arrest and detention – and a timely hearing. At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have his counsel present.[2]

5. This matter is referred to the assigned Magistrate Judge for all further pretrial proceedings.

IT IS SO ORDERED.

Dated:   **January 7, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC7 – Coral25cv02051.tro

---

[2] This burden of proof has been regularly applied by courts reviewing similar cases, and the Court adopts the views of those courts here. See, e.g., *Pablo Sequen v. Albarran*, --- F.Supp.3d ----, 2025 WL 2935630, at *13–14 (N.D. Cal. Oct. 14, 2025); *Martinez Hernandez v. Andrews*, No. 1:25-cv-01035-JLT-HBK, 2025 WL 2495767, at *13–14 (E.D. Cal. Aug. 28, 2025); *Castellon v. Kaiser*, No. 1:25-cv-00968-JLT-EPG. 2025 WL 2373425, at *11–12 (E.D. Cal. Aug. 14, 2025).